Good morning, your honor. If the court please. Daniel Casillas, attorney on behalf of your colleague, Julio Almazan-Becerra. Before starting, I would like to reserve a couple of minutes to respond. That's fine. The clock is counting down. Thank you, your honor. I'd also like to take the opportunity to thank the court for allowing me to, for inviting me to argue on behalf of Mr. Almazan-Becerra. To get to the crux of the facts of the matter with respect to the case of Almazan-Becerra, I think that this case is not much different from the Amesco matter. And I think that the important factor here is the seriousness of the plus 16 prior conviction enhancement. Similarly as to in the case of Amesco-Vasquez, I believe that the court cannot find that this was error in this case and that it was a substantially unreasonable sentence. Likely to compare this fact to that of Amesco-Vasquez, we have a native... Counsel, can I ask you this? So the first time he got, what, 57 months was it? Actually he was sentenced to 70 months and it was on Amesco, I'm sorry, on Almazan-Becerra too. When it was reversed, the court then gave him a six level departure downward to 57 months, correct. Okay, but so then he comes back, he's re-offended. Correct. Why wouldn't he need to get more time the second go around? How could it be substantively unreasonable to give him somewhat more time the second go around? Well, it's because I think we were starting off at an unreasonable starting point, first of all, with the plus 16. Just like as they said in Amesco-Vasquez, they said, well look, plus there was too much weight placed on that plus 16 enhancement. So that's one of the main reasons. The other thing that came out in this case that I don't believe... Counsel, just so you know where I'm coming from, we've already decided that the 57 months was fine, right? Notwithstanding the relatively minor nature of the 16 level, the underlying offense. So we start with that as a baseline, it seems to me. And the question is just simply whether an additional 13 months for a re-offender is substantively unreasonable. And I have a hard time seeing why it would be. Well, in this case, there was additional facts that came out in this case that didn't come out in the prior case. And one of them was with respect to his mental intellectual capacities. The fact of the matter is that there was a competency examination held in this case. That came out. That's something to trigger to the court, district court, that there's an issue with respect to his mental capacity. I also submitted... The judge took it into consideration, though, didn't he? Well, if the court took it into consideration... He was aware of it. He was aware of it, certainly. It got to his attention. It was. It was certainly. But if we take a look at that and say, well, that he had more mitigating factors in this sentencing time than he did in the prior case... So your position is he should get a lower sentence for re-offending than he got the first time around. How does that make sense? In this case, in this case, as to the specific facts and circumstances of this case, that is my position. That is correct. And that is because, as I've indicated, we start off at an unreasonably high sentence. The recommendation from the probation department in this case was essentially 20 years. I'm sorry, 10 years. It was 115 months. The recommendation of the government was 84 months, was 7 years. My recommendation was a time-server recommendation, which would have been less than what he received in the prior case, but because of the additional factors in this case, and because a mesquivascus also had been decided in the interim. And the court also could look at the dated staleness of the prior conviction, the fact that it was a minor felony, as the court puts it. It was $30 worth of, you know, marijuana that he sold in 1995. And also the court in Mesquica said, well, it's not only the staleness, but because he's exhibited no subsequent violent typo. Which wasn't true here, though, because since the prior sentence for illegal re-entry, Mr. Almazan Becerra had pretty much been in custody the whole time, right? Well, Mr. Almazan Becerra had some subsequent convictions, but so did a mesquivascus. But I think the distinction here is that they said because he's exhibited all non-violent, basically non-violent offenses, subsequent to the initial practically attempted murder case where he almost killed somebody. In this case, Mr. Almazan Becerra has never, basically all his convictions are non-violent. He's not once had a violent offense. And where in Mesquica, I mean, if you take a look at it and say, okay, here he sold $30 worth of marijuana, mesquivascus, almost killed somebody. Okay, they were both dated. Granted, a mesquicus was 25 years old, did not score. In this case, the only reason Almazan Becerra is 17 years old, still dated, but it scored because he had subsequent violations, and so that scored him. But I think it's interesting to note here that if we use the mentality here in this particular case, not taking into account his intellectual deficiencies for Mr. Almazan Becerra, it's like punishing an individual who doesn't understand that the court essentially feels, as Your Honors pointed out, well, whatever he got last time, we've got to give him more because we've got to teach him a lesson, we've got to deter him, we have to make him understand that if he comes back, he's going to keep getting a higher sense. For a person with a limited, you know, below-average intelligence, or for a person like Mr. Almazan Becerra, the additional time doesn't sink in as a deterrence. The fact that he's going to get custody is deterrent in and of itself. But I find it interesting to note that on his first illegal entry case, he essentially received 30 months, 2 1⁄2 years. On the second illegal entry case, he received double that, you know, 5 years, actually 3 months to shy of 5 years. And on this case, the recommendation was, let's double the 5 years to 10 years. The probation department said, well, 115 is certainly reasonable in this case. And so I don't believe that that's a reasonable position to take. But the judge did. The district judge gave a much lower sentence than that, which kind of sounds like he took into account everything you're talking about. Well, no. What the court took into account in this case, the court took into account the government's recommendation. Well, not the government. What the court took into account was the minus 2 for acceptance of responsibility, which brought it down to an 84-month range. The low end was 84 months. That's what the government was then asking for. He then went down an additional 2 points. Okay, which if we take, like Your Honor says, if we take into consideration, well, he got 57 months last time, you know, why shouldn't he get more this time? But the reason he got 57 months is because the court departed 6 levels down. They basically said the prior conviction was so minor that I'm going to depart 6 levels down, which I fully expected to happen in this particular case and say, well, if Your Honor departed 6 levels prior because the conviction was so minor, this is even more dated and just, I mean, it's the same conviction. He should get another 6 levels down. That's how we would have gotten below the 57 months because he did not get acceptance of responsibility in the first case. In this case, he received 2 levels off for acceptance of responsibility because he chose not to challenge the case at trial. Do you want to save some time for rebuttal? Yes, Your Honor. Thank you very much. Good morning, Your Honors. Brandon Kimura for the United States. Just a response, Your Honors. Again, this is the defendant's third immigration conviction, as counsel mentioned. He received 30 months, then received a 27 on his second conviction, received an additional 27 months. Now he has received an incremental increase of 13 months, which was a variance downward from his guideline range, which at the time of sentence was calculated at a level 22, which would have put him at 84 to 105. Now I know defense counsel has made much of the fact that probation recommended 115 months, but as Your Honor pointed out, the court considered all 3553 factors and then departed down very generously, I believe, down to 70 months. Now as was noted in the prior case, this court already determined a substantive reasonableness of the 57-month conviction, and I think what's important to note in that is that in that case, the court had come up with a guideline range of 57 to 71 months. In this case, the defendant received 71 months, still within the same guideline range that he received in the last case. Again, I think generous and more than reasonable. The defendant is a Category 6 criminal history score, and I think importantly, differently from Ms. Cusa, he is a multi-offender. He's been in custody for almost the whole period. Again, three convictions. Between his 1996 drug trafficking conviction, he has several felonies, mostly dealing with possession and controlled substance, including his immigration felonies. Also, too, Ms. Cusa is a case where I think, again, by its own text, is limited in scope. The conviction in that case was 25 years old. It did not score. In this case, the conviction does still score. It scores as a plus 16, and that's, again, because of the probation violation. And also, too, in Ms. Cusa, the issue was, is that the court went with a straight guideline sentence. It did not consider — I mean, this Court took issue with the fact that it did not use the 3-5-5-3 factors to further vary downwards. In this case, as the record reflects, the district court did go over the 3-5-5-3 factors in detail after hearing from counsel about the defendant's mental state and other mitigating factors. And it considered all of that. It considered, again, it explicitly considered the fact that the drug conviction was minor. And for that — and that was one of the driving factors that he — that the district court decided to go below the guideline range. For these reasons, Your Honor, unless the Court has any additional questions, I believe that the guideline sentence is reasonable, and the district court should affirm the district court's sentence. Okay. Thank you, counsel. Thank you, Your Honor. I just have a brief reply. I wanted to point out that I — when we're talking about the prior conviction, the minoreness, the harnessed — well, not harnessedness of the prior conviction, he originally received a 10-month sentence for that conviction. For it to work, to enhance his sentence at this point in time, up to 10 years, I mean, it seems like an unreasonable and ridiculous consequence. You know, I'd like to point out that, once again, the government counsel has pointed out that the court in this case considered the minoreness of the prior conviction. Well, likewise did the district court in Al-Masabdassara 2. And in that case, found that it was worth a minus 6 departure. In this case, the government believes a minus 2 is a generous departure in this case. It's not any type of a generous departure. I think the problem is that it started at an unreasonably high level, at a range of around 10 years, with a plus 16. So too much weight was placed on the prior conviction. It was minor. It was dated. It shouldn't have impacted Mr. Al-Masabdassara to this extent. And the court should have stepped back, taken a look at that, and made the right decision and imposed a lesser sentence. Thank you. Thank you, counsel. We appreciate your arguments. Thank you. United States v. Al-Masabdassara will be submitted at this time.
judges: Kennelly, Paez, Watford